UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WOODROW WARD,

                              Plaintiff,

                                                                         Case # 18-CV-1317-FPG

v.

                                                                          DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**INTRODUCTION**

On May 8, 2014, Plaintiff Woodrow Ward protectively applied for Supplemental Security Income benefits under Title XVI of the Social Security Act, alleging disability beginning on January 1, 2013. Tr.[1] 15, 228-29. The Social Security Administration ("SSA") denied his claim. Tr. 99-109. Good cause was shown for Plaintiff's failure to appear at his first hearing, and on September 6, 2017, Plaintiff testified at a second hearing held before Administrative Law Judge Bryce Baird ("the ALJ"). Tr. 40-76. On September 27, 2017, the ALJ issued an unfavorable decision. Tr. 15-33. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff then appealed to this Court.[2]

The parties make competing motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 15. For the reasons that follow, Plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 1383(c)(3).

**LEGAL STANDARD**

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation.[3] The ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him to perform the requirements of his past relevant work; and (5) whether the claimant's RFC permits him to perform alternative substantial gainful work which exists in the national economy in light of his age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 416.920.

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation and citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. *See* 42 U.S.C. § 1383(c)(3) (citing 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation and citations omitted).

---

[3] The ALJ uses this analysis to determine whether a claimant is disabled and therefore entitled to benefits. 20 C.F.R. § 416.920.

**DISCUSSION**

**I.     The ALJ's Decision**

After finding Plaintiff had not engaged in substantial gainful work activity, the ALJ determined at step two that Plaintiff had the following severe impairments: cervical radiculopathy, lumbar radiculopathy, obesity, status-post traumatic gunshot injury to the abdomen, obstructive sleep apnea, asthma, rheumatoid arthritis, borderline personality disorder, depressive disorder, and post-traumatic stress disorder. Tr. 17.

Plaintiff only takes issue with the mental limitations incorporated into the RFC. ECF No. 13-1 at 14-25. To that end, the ALJ found that Plaintiff would be "limited to simple routine tasks, which can be learned after a short demonstration or within 30 days. He would not be required to drive a vehicle. He could have occasional interaction with the public and occasional interaction with coworkers." Tr. 21.

In crafting this portion of the RFC, the ALJ gave "great weight" to state agency examiner H. Tzetzo, Ph.D.'s opinion that Plaintiff could "handle brief and superficial contact" with coworkers and the public because that limitation was consistent with other record evidence and supported the ALJ's conclusion that "the claimant can . . . have occasional interaction with the public and coworkers." Tr. 28-29, 104. The ALJ also gave "significant weight" to consultative examiner Susan Santarpia, Ph.D.'s opinion because it "comport[ed] with the claimant's ability to perform unskilled work as provided in the residual functional capacity herein." Tr. 29. Finally, the ALJ gave "some weight" to Licensed Mental Health Counselor ("LMHC") Lisa Marek's opinion, which was co-signed by Michael Godzala, M.D.[4] Tr. 29. LMHC Marek and Dr. Godzala opined that Plaintiff "retained a fair ability to work in coordination with or in proximity of others, get

---

[4] The ALJ referred to Dr. Godzala as "Michael Godich" but there is no Dr. Godich in the record. Tr. 29. The Court assumes that the ALJ was referring to Dr. Godzala.

3

along with co-workers or peers without unduly distracting them, and interact appropriately with the general public and maintain socially appropriate behavior." Tr. 29. The ALJ assigned LMHC Marek and Dr. Godzala's opinion some weight because the medical record did not support that LMHC Marek treated Plaintiff as much as she claimed to, or that Plaintiff's mental health issues would interfere with his ability to maintain a regular work schedule. Tr. 29.

Plaintiff argues that (1) the ALJ improperly disregarded a portion of Dr. Tzetzo's opinion and (2) Dr. Godzala's opinion was improperly discounted and the ALJ failed to develop the record. ECF No. 13-1 at 14-25. The Court disagrees.

## II.     The ALJ Did Not Err in Evaluation of Dr. Tzetzo's Opinion

Plaintiff argues that the ALJ, despite giving "great weight" to Dr. Tzetzo's opinion, erred by limiting Plaintiff to "occasional interaction with the public and occasional interaction with coworkers," which Plaintiff contends is less restrictive than Dr. Tzetzo's opinion that Plaintiff's "ability to deal with coworkers and the public would be somewhat reduced, but adequate, to handle brief and superficial contact." ECF No. 13-1 at 17; ECF No. 18 at 4.

As a general matter, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quotation and citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). Although where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted," *Dioguardi*, 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)), that is not the case here.

The SSA defines "occasional" as "occurring from very little up to one-third of the time." SSR 83-10. Plaintiff cites this definition as being inconsistent with "brief and superficial contact," but provides no support for that argument. ECF No. 13-1 at 18.

To the contrary, many courts have found that where, as here, an ALJ properly gave considerable weight to a medical opinion stating a claimant's ability to handle brief and superficial contact, an RFC containing a limitation to "occasional interaction" is supported by substantial evidence. *Amos v. Comm'r of Soc. Sec.*, No. 1:18-CV-1367 (WBC), 2020 WL 1493888, at *5-6 (W.D.N.Y. Mar. 27, 2020) (where ALJ gave significant weight to Dr. Tzetzo's opinion that plaintiff could handle brief and superficial contact, finding RFC providing for occasional interaction with the public and coworkers was supported by substantial evidence); *Torres v. Comm'r of Soc. Sec.*, No. 17-CV-579 HBS, 2019 WL 2117651, at *3-4 (W.D.N.Y. May 15, 2019) (finding, where ALJ completely omitted consideration of Dr. Tzetzo's opinion that plaintiff could handle brief and superficial contact, that RFC limiting plaintiff to occasional interaction with the public was nonetheless consistent with Dr. Tzetzo's opinion and supported by substantial evidence); *Washington v. Berryhill*, No. 17-CV-00957-LGF, 2019 WL 1033521, at *5 (W.D.N.Y. Mar. 5, 2019) (where ALJ gave "somewhat more weight" to physician's opinion that plaintiff "had the ability to . . . perform[] customary work involving brief/superficial contact with co-workers and the public," finding the opinion consistent with RFC limiting plaintiff to "occasional contact with coworkers and the general public"); *see Honer-Anthony v. Comm'r of Soc. Sec.*, No. 1:17-CV-00217 EAW, 2018 WL 3630118, at *5 (W.D.N.Y. July 31, 2018) ("The ALJ's finding that [p]laintiff can tolerate occasional interaction with co-workers and the general public is not inconsistent with Dr. Tzetzo's findings that [p]laintiff's ability to deal with coworkers and the

public would be somewhat reduced, but adequate, to handle brief and superficial contact" and remanding on other grounds (internal citations and quotation marks omitted)).

public would be somewhat reduced, but adequate, to handle brief and superficial contact" and remanding on other grounds (internal citations and quotation marks omitted)).

Accordingly, the RFC limiting Plaintiff to occasional interaction with coworkers and the public is supported by substantial evidence.

### III. The ALJ Did Not Err in Evaluation of Dr. Godzala's Opinion

The ALJ gave "[s]ome weight . . . to the opinion of Ms. Marek, which was cosigned by Michael Godich, M.D. [sic]." Tr. 29. Plaintiff contends this was harmful error because the ALJ considered the opinion to be LMHC Marek's, who is a non-acceptable medical source, and weighed it as such, when the opinion was also Dr. Godzala's, a treating source, and was thus entitled to controlling weight. ECF No. 13-1 at 19-26; ECF No. 18 at 6-9. Plaintiff further argues that any uncertainty as to the basis for Dr. Godzala's opinion should have prompted the ALJ to develop the record. ECF No. 13-1 at 24; ECF No. 18 at 8-9.

The treating physician rule delineates the weight that ought to be accorded to a treating physician's opinion. *Honer-Anthony*, 2018 WL 3630118, at *3. "Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Id.* (internal quotations marks omitted). Opinions of non-acceptable medical sources, such as licensed mental health counselors, are not presumptively entitled to controlling weight, but are nonetheless "important, and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Stasiak v. Berryhill*, No. 17-CV-00437, 2018 WL 5993732, at *3 (W.D.N.Y. Nov. 15, 2018) (internal quotation marks omitted).

6

Plaintiff cites to *King v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 277, 282 (W.D.N.Y. 2018) for the proposition that "[m]edical source statements cosigned by a treating physician should be evaluated as having been the treating physician's opinion." ECF No. 18 at 6; *see* ECF No. 13-1 at 19. While true, *King* also states that the mere fact that a physician co-signed a medical source statement does not require the ALJ to consider that physician a treating source; rather, the ALJ retains his obligation to examine the treatment relationship between the physician and the claimant. 350 F. Supp. 3, at 282. It is a plaintiff's burden to supply evidence establishing a treating relationship, and if the record does not bear out such a relationship, the co-signed opinion is no more entitled to controlling weight than the opinion of any other non-treating physician. *See id.*

Here, the record does not establish that Dr. Godzala had a treating relationship with Plaintiff; thus, the ALJ's evaluation of the co-signed opinion did not constitute harmful error.

Plaintiff says he began treatment at Lakeshore Behavioral Health ("Lakeshore") "primarily" with Dr. Godzala and LMHC Marek in March 2016, although Plaintiff's admission assessment form lists LMHC Marek as his "crisis counselor." ECF No. 13-1 at 10; Tr. 568. To that end, in December 2016, Plaintiff's attorney at the administrative level requested all psychotherapy notes from January 2016 to date, and a completed mental impairment questionnaire. Tr. 569. In the questionnaire, dated January 1, 2017, LMHC Marek noted that she treated Plaintiff "weekly/biweekly" at Lakeshore. Tr. 542. However, there are few other treatment records from LMHC Marek or Dr. Godzala in the record. The only other indicators of Plaintiff's treatment at Lakeshore are a single treatment note from Dr. Godzala dated December 30, 2016 (Tr. 548-49); an Initial Psychiatric Evaluation dated August 4, 2016, signed by an unnamed nurse practitioner (Tr. 553-59); and an Admission Comprehensive Behavioral Health Assessment dated March 21, 2016, signed by LMHC Marek (Tr. 560-68). Dr. Godzala's treatment note indicated Plaintiff was

"seen as [a] transfer." Tr. 548. The dearth of treatment notes fails to establish that anyone, let alone Dr. Godzala, treated Plaintiff at Lakeshore weekly "from March 2016 to the present" as Plaintiff contends. ECF No. 13-1 at 10.

Accordingly, the ALJ's evaluation of LMHC Marek's co-signed opinion as that of a non-acceptable medical source was not error—the ALJ cannot be faulted for failing to give the opinion controlling weight when the record does not establish that Dr. Godzala was Plaintiff's treating physician. *See King*, 350 F. Supp. 3d at 282 ("Based on the record before the Court, it does not appear that [co-signing physician] Dr. Martin treated Plaintiff on an ongoing basis, and there are no treatment or visit notes authored by Dr. Martin, other than the May 2014 medical source statement. Accordingly, Dr. Martin was not a treating source, and the ALJ was not required to give her opinion controlling weight."); *Bogardus-Fry v. Astrue*, No. 7:11-CV-883 (MAD), 2012 WL 3779132, at *11 ("[W]hile the January 2010 MSS was co-signed by Dr. Williams, the Court finds no evidence that Dr. Williams had a treating relationship with plaintiff. The record contains only one treatment record prepared by Dr. Williams . . . ." (internal citations omitted)).

Though Plaintiff argues the ALJ had a duty to develop the record to seek clarity on the basis of Dr. Godzala's opinion, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (quotation and citation omitted). No such gap exists here. The ALJ had a medical source opinion from Dr. Godzala and LMHC Marek. *Cf. Nanartowich v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6096P, 2018 WL 2227862, at *11 (W.D.N.Y. May 16, 2018) ("As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete

record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." (quotation and citation omitted)).

Moreover, the ALJ is not obligated to re-contact a medical source when further developing the record. The ALJ's duty to develop the record may be satisfied in other ways, such as ordering a consultative examination, which the ALJ did here. *See* Tr. 29, 377-81; *Weed Covey v. Colvin*, 96 F. Supp. 3d 14, 29 (W.D.N.Y. 2015) ("Encompassed in this duty [to develop the record] is the requirement that an ALJ assemble the claimant's complete medical history and re-contact treating physicians or obtain consultative examinations where the information received is inadequate to determine whether the claimant is disabled."); *see also Nanartowich*, 2018 WL 2227862, at *11. Dr. Santarpia's opinion that Plaintiff had a "[m]ild to moderate impairment . . . in performing complex tasks independently and relating adequately with others" and could "follow and understand simple directions and instructions, perform simple tasks independently," and "learn new tasks" was given significant weight. *See* Tr. 29, 379-80. Dr. Santarpia ultimately concluded that "[t]he results of the [Plaintiff's] present evaluation appear to be consistent with psychiatric problems, but, in and of itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." The RFC assigned comports with Dr. Santarpia's opinion.

The ALJ appropriately evaluated LMHC Marek's opinion and developed the record, and the RFC assigned is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion, ECF No. 13, is DENIED and the Commissioner's motion, ECF No. 15, is GRANTED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 4, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court